# Richmond

## WILMER W. BROWN v. STATE MILK COMMISSION.

March 9, 1964.

Record No. 5711.

Present, All the Justices.

*Henry T. Wickham* (*Tucker, Mays, Moore & Reed,* on brief), for the appellant.

*M. Harris Parker, Assistant Attorney General* (*Robert Y. Button, Attorney General,* on brief), for the appellee.

EGGLESTON, C. J., delivered the opinion of the court.

Wilmer W. Brown made application to the State Milk Commission, hereinafter referred to as the Commission, for a limited general distributor's license on the Harrisonburg milk market. In accordance with the usual procedure, the Commission referred the application to the Harrisonburg Milk Board for recommendation. The local board recommended that the application be denied for the reasons that (1) the proposed license operation cannot be justified "by any element of public need, service or benefit;" (2) the local market is adequately served by the present licensed seven distributors; (3) any additional licensees "would tend to weaken and impair the present satisfactory structure of supply and demand," and "would not be fair to present licensed distributors" in this market area.

At a hearing before the Commission evidence was presented on behalf of and in opposition to the application. Shortly thereafter the Commission advised the applicant that it had approved the recommendation of the local board and denied the application.

In its written opinion and finding of fact the Commission based the denial of the application on the reasons assigned by the local board and the additional reasons that the evidence disclosed that the applicant (a) "is presently not pasteurizing, bottling or processing milk for consumption in the State as is required of a distributor in Regulation No. 7, § 3 A," of the Commission; (b) "is not qualified by experience and equipment to properly conduct the business as is required by Regulation No. 7, § 4 B;" (c) "does not have the necessary health permits required of a distributor by Regulation No. 7, § 4 L;" (d) "has operated without a license prior to the date of the hearing and though advised at such date to discontinue the same has continued to do so in violation of the rules and regulations of the Commission, Regulation No. 7, § 4 E."

For these reasons, the Commission said, it was of opinion that the granting of the application "would not be in the public interest."

From the order of the Commission denying the license the applicant has appealed under Code, § 3-369. The substance of his assignments of error is that the evidence does not justify the denial of a license to him on any of the grounds stated by the Commission.

The applicant, Brown, is a producer and distributor of his own milk, for which purpose he leases and operates a farm known as Bowmont Dairy in Rockingham county. At the time of the hearing before the Commission he was milking twenty-five cows and selling about 100 gallons of milk a day.

On July 3, 1962, Brown had obtained the necessary health permits and began distributing his own milk in an area which was not then regulated or controlled by the Commission. Effective on September 15, the Commission revised and enlarged the then existing Harrisonburg-Bridgewater milk market so as to include the area or territory being served by Brown. The Commission then notified him that since the sales area of the local milk market had been redefined he must make application for a license to distribute milk within the new market area. Whereupon Brown applied for the license which is the subject of the present controversy. He testified that he desired only to continue the distribution of milk in the area which was unregulated prior to September 15, 1962. The Attorney General's brief concedes that thus his application is for a limited general distributor's license.

Brown does not live at or near the Bowmont farm and leaves the milking operation to a full-time employee. Since he does not own the necessary equipment for pasteurizing his milk it is taken by truck to Riverside Farms at or near Verona in Augusta county, where it is processed by G. E. McAllister who is engaged in processing milk for the Staunton Military Academy and the Augusta Military Academy. After the processing the applicant's milk is carried to a storage plant at Mt. Jackson where space for storage and icing has been rented. From this storage facility the milk is distributed and sold by Brown to his customers. Ninety per cent of his milk is sold at retail.

Representatives of the Harrisonburg Milk Board appeared in opposition to the granting of a license to Brown "under any conditions." There was evidence that the seven licensed distributors are adequately serving the Harrisonburg market area.

We agree with the applicant's contention that the evidence does not justify the denial of the license to him on any of the grounds stated by the Commission.

As has been said, the Commission adopted the reasoning of the local board that the local milk market was adequately served by the present licensed seven distributors and that any additional licensees would tend to weaken and impair the present satisfactory structure of supply and demand. In *Richmond Food Stores, Inc.* v. *State Milk Commission*, 204 Va. 46, 56, 57, 129 S. E. 2d 35, 42, 43 (decided since the present application was heard by the Commission), we held that, in the absence of evidence that the issuance of a license would tend to "a destructive competition" in the market, the fact that the area was adequately served by a number of other licensed distributors was not a valid basis for the denial of an application. We there said:

"It is clear that the Commission is here holding, in effect, that when there are already two or more existing distributors in the milk market who are rendering adequate service in supplying milk to the public, it is not in the public interest to license another distributor on that market. In so holding, the Commission creates a monopoly for the existing distributors, stifles competition, and abolishes free enterprise in the milk industry. Under the ruling of the Commission no new distributors might ever be licensed on a milk market. The Virginia Milk Act did not contemplate such a result." 204 Va., at page 56, 129 S. E. 2d, at page 42.

We adhere to that view which is quite applicable to the present case.

██ The Commission next held as a ground for the denial of a license that the applicant is presently not pasteurizing, bottling or processing milk for consumption as is required of a distributor by Regulation No. 7, § 3 A. That section provides:

"*General Distributor Licenses* are classified as those issued to persons (including producer-distributors) who pasteurize or bottle milk or process milk into fluid milk for consumption within the State of Virginia. All general distributors *shall have facilities* adequate to handle milk from assigned producers." (Emphasis added.)

The Attorney General argues that this regulation requires that a distributor should *own* the facilities or equipment for pasteurizing, processing or bottling his milk and that since this applicant does not own them he is not properly equipped to comply with this regulation.

We do not agree with this contention. The rule as written does not require that a general distributor shall own such equipment. It is sufficient that he have access to such facilities where the processing may be properly done. There is an entire lack of evidence that the ownership of such facilities by the distributor is necessary or

in the public interest. The obvious purpose of the regulation is to see that the milk is properly pasteurized or processed for consumption. The evidence here shows without question that the applicant fulfills this purpose and requirement by having his milk properly pasteurized or processed through his arrangement with McAllister.

As another reason for denying the license the Commission held that the applicant is not qualified by experience and equipment to conduct properly the business as is required by Regulation No. 7, § 4 B. This regulation provides:

"The Commission may decline to grant a license and may suspend or revoke a license or permit, after at least ten days notice and a hearing, for any of the following reasons: * * *

"B. That the applicant, licensee or permittee is not qualified by character, experience, financial responsibility and equipment to properly conduct the business. * * * "

The Attorney General argues that the applicant's own testimony shows that he lacks the necessary experience and equipment because he has never processed milk, does not own the equipment therefor, rents the required storage space, and is ignorant of the requirements of the industry.

We have already seen that the applicant's arrangement for pasteurizing and processing the milk is a sufficient compliance with the regulations of the Commission. That he has sufficient experience to conduct the small business which he had undertaken is shown by the fact that he has been a producer-distributor for several months prior to his application for a license and that he has rendered satisfactory service to thirty-odd persons and concerns who have purchased milk from him. These customers stated in their petition filed with the Commission that they desired to continue to do business with the applicant and requested that a license be granted to him in order that they may do so.

The Commission's finding that the applicant did not have the necessary health permits required by the regulations is without evidence to support it. The applicant testified that he had the necessary health permits, copies were introduced in evidence, and there is no showing to the contrary.

We likewise find no basis for the Commission's finding that the license should be denied because the applicant had operated without a license prior to the date of the hearing. As has been said, the applicant was distributing milk at the time the Commission en-

larged the territory and embraced that in which he had been operating. Five days prior to that time, in accordance with the provisions of Code, § 3-366, he applied by mail for a license effective in the area wherein he had been operating. He was not given a hearing on his application until thirty days later and was not notified that his application had been refused for another three weeks. The delay in passing on his application was occasioned by no fault of his. If he had discontinued the distribution of milk during this period his business may well have been destroyed.

On the whole we find no basis for the action of the Commission in denying the application for a license. Accordingly, the order of the Commission is reversed and the case remanded with the direction that the applicant be granted a limited general distributor's license to distribute milk and milk products in that portion of the area of the Harrisonburg milk market which was not under the regulation or control of the Commission prior to September 15, 1962.

*Reversed and remanded.*